Electronically Filed
Intermediate Court of Appeals
CAAP-12-0001096
29-NOV-2013
11:31 AM

NOS. CAAP-12-0000806 and CAAP-12-0001096

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

SUSAN P. GORDON, Plaintiff-Appellee, v.
IRA GORDON, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 10-1-6664)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Leonard, JJ.)

This consolidated appeal[1] arises from the Family Court
of the First Circuit's[2] (family court): (1) August 22, 2012
"Decree Granting Absolute Divorce" (Divorce Decree) dissolving
the marriage between Defendant-Appellant Ira Gordon (Ira) and
Plaintiff-Appellee Susan Gordon (Susan); and (2) November 28,
2012 "Order RE: Plaintiff's Motion and Declaration For Post-
Decree Relief Filed September 26, 2012" (Order re: Post-Decree
Relief).

On appeal, Ira asks this court to vacate the family
court's Divorce Decree[3] based on the family court's alleged
errors:

---

[1]  On January 4, 2013, this court entered an order consolidating Nos.
CAAP-12-0000806 and CAAP-12-0001096 under No. CAAP-12-0000806.

[2]  The Honorable Francis Q.F. Wong presided.

[3]  On December 21, 2012, Ira appealed from the family court's Order re:
Post-Decree Relief, contesting provisions imposing sanctions in the event of
late payments.  On December 27, 2012, the family court modified its order,
omitting the sanctions, and therefore obviating the need for Ira to raise
points of error concerning the Order re: Post-Decree Relief in this appeal.
The Honorable Judge Steven M. Nakashima presided.

(1) the judge that presided at trial was not the judge who reviewed and signed the dispositional documents challenged on appeal;

(2) an erroneous finding of marital waste was used as a rationale for departing from Partnership Principles;

(3) the failure to identify, categorize, and value the marital assets, or properly allocate the parties' Category 1 and 2 property in violation of Hawaii Revised Statutes (HRS) § 580-47(a) (Supp. 2012) and Partnership Model Division law; and

(4) the alimony award of $3,000 per month for ten years constituted an abuse of discretion.

I.

Ira first contends the family court committed reversible error because Judge Wong, who presided over the June 26, 2012 hearing, failed to sign her July 24, 2012 Minute Order (Minute Order) and Judge Browning, who did not preside, signed the August 22, 2012 Findings of Fact/Conclusions of Law (FOFs/COLs) and Divorce Decree.

"The normal rule is that only the judge who conducted the trial may enter a decision in a case." Matter of Death of Elwell, 66 Haw. 598, 601, 670 P.2d 822, 824 (1983). In Elwell, the Hawai'i Supreme Court reversed and remanded the circuit court's judgment where a presiding judge had not signed or filed any FOFs/COLs and the signing-judge instead signed and filed FOFs/COLs submitted by a parties' attorney. Elwell, 66 Haw. at 599, 670 P.2d at 823. Unlike the circumstances at issue in Elwell, the Minute Order shows that Judge Wong both presided over the hearing and that she, and not Susan's counsel, authored the FOFs/COLs and Divorce Decree.

"[W]hen a judge other than the one who presided over a [Hawai'i Rules of Penal Procedure] HRPP Rule 40 hearing signs the [FOFs/COLs] and order, the order must ordinarily be vacated." Raines v. State, 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995) (deciding a case in which a presiding judge retired from the bench before FOFs and an order could be filed and another judge signed them for him). The Raines court reasoned that this situation presents a "danger that one judge might misinterpret a

prior judge's informal notes or oral statements, or err in attempting to judge the credibility of witnesses from a transcript[.]" Id. (internal quotation marks omitted). By contrast with the unfiled FOFs and order in Raines, Judge Wong's Minute Order contained the exact wording to be used in the final FOFs/COLs and Divorce Decree and specific references to sections and passages in Susan's proposed FOFs/COLs and decree. There was no occasion for Judge Browning to interpret "informal notes or oral statements" nor make any credibility determinations and therefore dangers present in Raines were not present in the instant case.

Likewise, we distinguish the instant case from Application of Pioneer Mill Co., 53 Haw. 496, 497 P.2d 549 (1972), which held, "the signature of the second judge of the Land Court cannot validate the decree entered . . . [because] the second judge could not make a decision when he had taken no part in the trial of the case." Id., 53 Haw. at 504 P.2d at 555. Because Judge Browning made no decision, other than to place his signature over the printed name of Judge Wong, Pioneer Mill Co. does not require this court to vacate the family court's FOFs/COLs.

Finally, as Susan notes, In re T Children, 113 Hawaiʻi 492, 155 P.3d 675 (App. 2007) concerned a situation in which a signing-judge prepared FOFs/COLs concerning the credibility determinations without having taken part in court proceedings and without the aid of trial transcripts. Id. at 496, 155 P.3d at 679. By contrast, Judge Wong directed the preparation of the family court's FOFs/COLs and Divorce Decree and presided over the June 25 and 26, 2012 hearings, which included determinations of credibility made therein.

## II.

Ira's second point of error concerns the family court's determination that Ira's dissipation of marital assets prior to the parties separation through gifts and payments to his girlfriend, Suphannee Wentworth (Wentworth), and negligently late payments to the Internal Revenue Service (IRS), constitute valid and relevant circumstances (VARCs) allowing deviation from

marital partnership principles in the division of the marital estate. Ira appears to argue that the family court should have required him to repay amounts he spent on Wentworth and the IRS tax liability instead of finding that these constitute VARCs.

The partnership model employs a five category scheme in which categories 1 (property separately owned by one spouse on the date of marriage) and 3 (property separately acquired by gift or inheritance) consist in values to be repaid to the contributing spouse, while categories 2 (increase in value of category 1 property during the marriage), 4 (increase in value of category 3 property during the marriage), and 5 (the residual marital estate owned by both or either spouse at the date of the conclusion of the evidentiary part of the trial (DOCOEPOT)) consist in values to be awarded one-half to each spouse. Jackson v. Jackson, 84 Hawaiʻi 319, 332, 933 P.2d 1353, 1366 (App. 1997). "Under the Partnership Model, absent [VARCs], each partner is generally awarded his or her capital contribution, while the appreciation is split fifty-fifty. VARCs permit the family court to equitably deviate from the Partnership Model in dividing the parties' Marital Partnership Property." Kakinami v. Kakinami, 127 Hawaiʻi 126, 131 n. 4, 276 P.3d 695, 700 n. 4 (2012).

In determining the division of partnership property, the family court proceeds as follows:

> (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

Jackson, 84 Hawaiʻi at 332, 933 P.2d at 1366.

The family court's determination that the facts present VARCs authorizing a deviation from the partnership under (2)(a) model is a question of law that this court reviews under the right/wrong standard of review. Jackson, 84 Hawaiʻi at 332-33, 933 P.2d at 1366-67.

The family court found Ira was responsible for filing the 1997 taxes, acted negligently in failing to timely file them, misled Susan about the status the tax payment, and, consequently,

Susan's social security check continues to be garnished. For reasons discussed below, we conclude that the family court correctly determined that facts attending the IRS tax debt constitute a VARC. See Jackson, 84 Hawai'i at 322, 933 P.2d at 1366.

The family court found Ira misled Susan to believe the IRS debt had been paid from equity lines of credit taken out on the Maono Loop home, resulting in ongoing garnishment of her social security check. In comparable circumstances, where a defendant-spouse's fiscal irresponsibility and misrepresentations to a plaintiff-spouse resulted in parties' substantial debt upon divorce, this Court has held, "a reduction of the value of the marital estate during the marriage, but prior to the time of the divorce, is not a chargeable reduction." Higashi v. Higashi, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004).

By way of garnishment of her social security income, Susan is the only partner "suffer[ing] the consequences of one partner's failures." C.f. Hatayama v. Hatayama, 9 Haw. App. 1, 3, 818 P.2d 277, 278 (1991) ("During a marriage, both partners enjoy the consequences of one partner's successes and both partners suffer the consequences of one partner's failures.") (Emphases added.) The outstanding IRS tax debt not only reduced the marital estate during the marriage and pendency of divorce, but continues to reduce Susan's income.

In any case, the family court did not charge Ira with an outright reduction in the amount of the IRS tax debt. Instead, the family court gave priority to the payment of the IRS debt and used this as a factor supporting its decision "to deviate from a strict 50/50 division of partnership property and to award alimony."

> In determining whether one or more valid and relevant considerations authorize the family court to deviate from the Partnership Model, the family "court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." HRS § 580-47(a) (1993). Other than relative circumstances of the parties when they entered into the marital partnership and possible exceptional situations, the above quoted part of HRS § 580-47(a) requires the family court to focus on the present and the future, not the past.

Jackson, 84 Hawai'i at 333, 933 P.2d at 1367 (emphases added).

The present and future "ongoing garnishment of [Susan]'s social security check" is an appropriate factor considered in awarding spousal support and deviating from the partnership model of property division. We conclude the family court's decision to prioritize the IRS tax debt and to use this fact to support deviation from partnership principles was not wrong. See Jackson, 84 Hawai'i at 332-33, 933 P.2d at 1366-67 (holding that the determination of whether facts present valid considerations authorizing a deviation from the partnership model is reviewed under the right/wrong standard of appellate review).

Ira further contends the family court erroneously departed from partnership principles by awarding Susan $41,830, representing wasted marital assets with regards to Ira's relationship with Wentworth. The family court "[found] valid and relevant considerations authorizing a deviation from the Partnership Model and integrate[d] by reference the findings of fact[;]" one of which found that Ira "acted in bad faith when he used the funds from the Second Equity Line of the Maono Loop residence to make large purchases for his girlfriend."

> Waste of marital assets is chargeable to a divorcing party "when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction." "By definition a reduction of the value of the marital estate during the marriage, but prior to the time of the divorce, is not a chargeable reduction. (family court has wide discretion to determine post-separation wasting of assets).

Chen v. Hoeflinger, 127 Hawai'i 346, 358, 279 P.3d 11, 23 (App. 2012) (as corrected Mar. 12, 2012) (citations omitted).

> Depending on the facts, the time of the divorce commences on the earliest of the following dates: (i) the date of the final separation in contemplation of divorce (DOFSICOD); (ii) the date of the filing of the complaint for divorce; (iii) the date one or both of the parties took a substantial step toward the DOFSICOD that subsequently occurred, or (iv) the date one or both of the parties took a substantial step toward the filing of the complaint for divorce that was subsequently filed.

Higashi, 106 Hawai'i at 241, 103 P.3d at 401.

Ira's expenditures on legal fees for Wentworth occurred after July 28, 2010, on which date Susan filed for divorce. The

family court properly found Ira's expenditures on Wentworth's legal fees occurred during the pendency of divorce and were wasted marital assets. Higashi, 106 Hawai'i at 241, 103 P.3d at 401.

Credit card statements dated March 26, 2010 and April 25, 2010 were admitted as evidence that Ira spent in excess of $30,000 on jewelry for Wentworth. At trial, Ira admitted that he spent $18,000 at Diamond Gallery, $11,000 at Ben Bridge jewelers, and approximately $1,770 at Louis Vuitton on gifts for Wentworth. Ira contends these expenditures on Wentworth should not be considered marital waste because the parties date of final separation in contemplation of the divorce (DOFSICOD) did not occur until July 2010.

Susan presented evidence that DOFSICOD occurred earlier in 2009. At trial on June 16, 2012, the family court took judicial notice of Wentworth v. Wentworth, FC-D 09-1-2410 (Nov. 3, 2010). In Wentworth, Ira testified that he had "moved in with [Wentworth] in March of 2009." When confronted with this prior testimony, Ira stated that he meant he had been staying with Wentworth part of the time, but was still living at Maono until about May or June of 2010. The family court found "[t]he exact date at which [Ira] could have said to have 'moved out' of the marital residence at Maono Loop is unclear."

The family court found Ira "not credible" and specifically had "not provided a credible accounting" of funds provided by the second equity line taken out on the Maono Loop marital property and proceeded to find Ira's expenditures in excess of $30,000 on Wentworth were "clearly a wasting of marital assets." The family court further found that Ira "declined to correct his testimony [that he moved out of the Maono Loop residence in July 2010] until confronted with prior sworn testimony wherein he stated that he began dating and living with Wentworth in 2009" and "then testified that the relationship began in late 2009, until confronted with the fact that he purchased airline tickets for Wentworth and her daughter in December 2008 . . . . After again being confronted, [Ira] admitted the relationship began in early 2009." The family court

7

found Ira "willfully misrepresented to the [family c]ourt purchases made and funds expended on his girlfriend, [Wentworth]." Because Ira took a "substantial step towards the DOFISCOD that subsequently occurred" prior to 2010, the family court did not err by considering his expenditures on Wentworth in early 2010 to be VARCs. Higashi, 106 Hawai'i at 241, 103 P.3d at 401.

### III.

Ira's third contention is the family court's property division rulings erroneously depart from partnership principles and disregard his category 1 credits in the amount of $1,468,077. We conclude the family court did not err because it found the parties entered a pre-marital economic partnership culminating in their marriage on December 16, 1997 and therefore Ira's premarital contributions were subject to the family court's discretion to order a just and equitable division of property between the parties. Chen, 127 Hawai'i at 360, 279 P.3d at 25 (citing HRS § 580-47).

"A 'premarital economic partnership' occurs when, prior to their subsequent marriage, a man and a woman cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities." Helbush v. Helbush, 108 Hawai'i 508, 515, 122 P.3d 288, 295 (App. 2005). The record supports the family court's finding of a premarital economic partnership because Susan and Ira jointly contributed capital and labor to real estate investments, filed joint tax returns, and lived in a relationship culminating in their marriage.

We reject Ira's contention that no premarital economic partnership existed prior to May 3, 1996, the date of his divorce from his first wife. So long as it "does not contravene a just and equitable division of property[,]" the family court may consider the parties' premarital economic partnership "even though one of the parties might have been legally married to someone else at that time." Chen, 127 Hawai'i at 360, 279 P.3d at 25 (citing HRS § 580-47).

The family court must consider equitable factors in

determining whether VARCs exist to justify departing from the partnership model, itemize those considerations, and use its discretion to decide whether to deviate from the partnership model and the extent of that deviation. Jackson, 84 Hawai'i at 322, 933 P.2d at 1366. Equitable considerations include "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Jackson, 84 Hawai'i at 333, 933 P.2d at 1367 (citing HRS § 580-47(a)). Equitable factors concerning the parties' premarital economic partnership are appropriate to determining VARCs justifying equitable deviation from partnership principles. See Jackson, 84 Hawai'i at 322, 933 P.2d at 1366.

Without explicitly stating that the parties' premarital economic partnership constituted a VARC, the family court found "[VARCs] and integrate[d] by reference the findings of fact[.]" The family court then proceeded to summarize its findings concerning the parties premarital economic partnership as follows:

227. At the beginning of their economic partnership which concluded in marriage, [Susan] was as economically self-sufficient as [Ira] despite their apparent differences.

228. The total value of [Ira] estate exceeded the total value of [Susan's] estate; however, Plaintiffs estate had more liquidity than did [Ira's].

229. [Susan's] greater liquidity allowed the parties greater flexibility and leverage to grow the economic partnership, flexibility they would not have had but for [Susan's] liquidity.

230. At the time of separation in July 2010, Plaintiff was economically dependent on [Ira]. Her investment properties and investment accounts had been liquidated; she had no cash on hand, no retirement savings, and no job.

231. By the date of trial, [Susan] also had nowhere to live, no car, her social security check was being garnished by the IRS, and approximately $140,000.00 in taxes was due.

232. At the time of separation in July 2010, [Ira] was economically self-sufficient, had a profitable real-estate business, three known retirement accounts, investment properties, two vehicles, and was living with his girlfriend in a marital property at Century Center.

233. By the date of trial, [Ira's] circumstances had not changed.

The family court specifically found the liquidation of Texas properties Susan owned at the inception of the marriage to be a VARC in determining to deviate from the marital partnership model.

Ira appears to contend that because the family court "did not provide a property division chart, indentify [sic] or value the marital assets, assign them categories, compute pre-marital assets, credit each spouse for them, or justify its property division in this case[,]" it erred by failing to itemize considerations supporting its decision to deviate from partnership principles. See Jackson, 84 Hawaiʻi at 322, 933 P.2d at 1366. Ira contends the family court's property division was "arbitrary" and an abuse of discretion, but points to no authority requiring the family court to provide a property division chart or otherwise prepare a schedule of its computations to justify its division of marital property. The family court was able to identify and value marital assets without a property division chart. An abuse of discretion occurs if the family court does not provide for a division of the property that "appear[s] just and equitable[.]" HRS § 580-47(a); see also Raupp v. Raupp, 3 Haw. App. 602, 609, 658 P.2d 329, 335 (1983) ("[w]hen dividing property in a divorce case, the family court is required to consider all circumstances of the case, exercise its discretion, and make a 'just and equitable' division of property." (Citing HRS § 580-47 (1976, as amended)).

We conclude the family court correctly determined that VARCs existed to justify deviation from the partnership model, acted within its discretion in ordering a 75/25 property division in favor of Susan, and did not abuse its discretion in determining that this would be a just and equitable division of the property.

                                    **IV.**

Ira's fourth contention is the family court disregarded relevant factors, and considered irrelevant factors, in awarding Susan alimony of $3,000 monthly for ten years. The family court's Divorce Decree states:

> 6. <u>Alimony</u>. Based on the length of the marriage, the
> financial conduct of the parties as it affected the economic

> partnership of the parties both pre and post marriage, the
> small amount of social security income received by [Susan]
> as her only source of continuing income (said source having
> been compromised by [Ira]'s actions), and the current age of
> [Susan], the [family c]ourt will award alimony by the
> Defendant to [Susan], however, the [family c]ourt will not
> be warding [sic] a lump sum as requested by [Susan].
> Rather, given the reasons to order alimony and the ability
> of [Ira] to continue to generate income, the [family c]ourt
> orders monthly alimony in the amount of $3,000.00 per month
> for 10 years, to commence August 1,2012, and payable by the
> first of each month thereafter for 10 years.

Ira contends the family court should not have considered "the financial conduct of the parties both pre and post marriage," because it is not a statutorily enumerated factor and assumes this phrase refers to Ira's dissipation of marital assets by way of gifts to Wentworth and negligent IRS tax filings. We note that the sustained discussion of the parties' premarital economic partnership in the family court's FOFs/COLs suggests the referenced "financial conduct" rather concerns the financial condition in which Susan will be left as a result of her uncompensated contributions of liquidity to the premarital partnership, which is a permissible consideration in determining spousal support. See HRS § 580-47(a)(12).

Ira further contends the family court failed to consider Susan's financial resources and Ira's age, physical and emotional condition, and ability to meet his own needs as a result of the alimony award and other property divisions. His contentions have no merit. The family court specifically found Susan had "nowhere to live, no car[;]" a garnished social security check was her only income; was unemployed and Ira's allegations that she could go back to work in sales lacked were not credible; and still owed $140,000 in taxes.

While Ira correctly states that "the ability [of a party] to meet his or her own need while meeting the need for spousal support of the party seeking support" is a valid consideration in the determination of an alimony award, the family court's negative credibility assessments undermine his reliance on representations of his inability to meet his needs. (Citing Cassiday v. Cassiday, 6 Haw. App. 207, 208, 716 P.2d 1145, 1146-47 (1985) aff'd in part, rev'd in part, 68 Haw. 383, 716 P.2d 1133 (1986)). Ira relies on his income and expense

statement, filed June 21, 2012, which reported a total monthly income of $4,180 and monthly expenses of $5,004, however the family court found Ira "not credible[.]"

In light of the negative credibility findings, we decline to find the family court's decision to award alimony to Susan against Ira's representations of his own needs constitutes an abuse of discretion. HRS § 580-47(a); see also Raupp, 3 Haw. App. at 609, 658 P.2d at 335 (holding "it must appear that the [family] court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" for an appellate court to conclude that the family court abused its discretion).

In the course of arguing that the family court's property division was "arbitrary[,]" Ira notes that the Divorce Decree included the East Kuiaha Partners property, worth $538,000 at the date of marriage, but no longer owned by him at DOCOEPOT. Ira first raised this issue in his motion for reconsideration filed on August 3, 2012. Ira's counsel filed a declaration on August 20, 2012 asserting, "East Kuiaha Partners has never been identified by either party as a current marital asset. Plaintiffs Exhibits 33-39 detailed the sale of the real property interests held by the Partnership and that all interests were sold by 2005. Plaintiffs Exhibit 36 attached shows that the Partnership itself was dissolved in 2/2006." Plaintiffs exhibits 33-36 consist in Maui County parcel histories for East Kuiaha Road parcels and show that Ira's Aloha Homes was no longer the mailing address for correspondence with East Kuiaha Partners after 2006. Ira's list of properties identifies the East Kuiaha Partners property to be worth $538,200 (with a $36,700 mortgage) on December 16, 1997. The family court found Ira's testimonies on the specific issue of properties currently held and their tax liabilities related to the use of a property "exchange" to be credible.

Because the record lacks substantial evidence to support a finding that East Kuiaha Partners is part of the marital property and awarding a non-existent property in the course of achieving a just and equitable distribution between the parties clearly exceed the bounds of reason, we conclude the

family court committed a reversible error by distributing the East Kuiaha Partners property to Ira.  See In re Doe, 95 Hawai'i at 190, 20 P.3d at 623; Raupp, 3 Haw. App. at 609, 658 P.2d at 335.

## CONCLUSION

We vacate in part the Family Court of the First Circuit's August 22, 2010 "Decree Granting Absolute Divorce" as it pertains to property division, including the award of the East Kuiaha Partners property to Ira, and remand this case for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, November 29, 2013.


On the briefs:

Peter Van Name Esser
Huilin Dong
for Defendant-Appellant.

Samuel P. King, Jr.
Gregory L. Ryan
Shannon Parrot
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge